The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This is our case number 4-23-1264, In Re Marriage of Jessica F., now known as Jessica S., and Justin H. Let me ask our counsel for the appellant to please state your name for the record, sir. Your Honor, my name is Jason Vincent. Thank you, sir. And counsel for the appellate, please state your name. Your Honor, does the court require us to stand even though it's Zoom? No, that's okay. It's fine. All right. My name is Michael A. Hankins, counsel for appealee. Okay. Thank you, counsel. Then, Mr. Vincent, on behalf of the appellate, you may proceed, sir. Thank you, Your Honor. Your Honor, Mr. Hankins had brought up the issue, is it preferable to stand or to sit, or is it counsel's decision? I feel free to sit. That's just fine, counsel. Thank you. Thank you. May it please the court. My name is Jason Vincent, and I represent the appellant, Justin H., in this case. I'm appearing here for three reasons associated with Mr. H.'s Morgan County post-divorce hearing associated with his son, G.H. Number one, there's an abusive discretion in failing to rule on the respondent's motion for in-camera. Number two, there's an abusive discretion by the court in granting petitioner's motions to modify the respondent's parenting time. Number three, there's an abusive discretion in the court's allocation of parenting time in the new parenting plan. The reference child, G.H., is a 10-year-old, was a 10-year-old in the fall of 2023. So you have a reference point as far as his age. Before the court on August 25 of 23 was the appellee's pro se petition to modify parenting time, the appellant's motion to modify parenting time, the appellant's response to the pro se petition to modify parenting time, the appellee's emergency motion to modify parenting time, the appellant's motion for in-camera interview of the minor child, the appellant's response to the emergency motion to modify parenting time, and finally the appellee's response to the respondent's motion to modify. All of those things were taken up by the court on August 25. The start of the hearing on August 25, the court initially heard argument as to the motion for in-camera that was filed by myself. In this particular case, we had a situation where the record is clear that we have mom believing one thing in part from the child and dad believing another thing in part from the child. This seemed like a case that it was perfect for the court to conduct an in-camera to learn the needs and desires of the actual child, the 10-year-old child. I have a question. Was there a guardian ad litem involved in this case? Your Honor, there was no guardian ad litem in this particular case. Did you make that request? No, Your Honor. Did that from the other part? Well, the reason I ask is, this is a 10-year-old child. We don't know much about this child from this record, and my question is this. Is there any reason, well, I'll state it differently. If a 10-year-old child is asked to have an in-camera conversation with the court, the child might be smart enough to figure out that when mom and dad are fighting over custody, that that's what the court is looking to and resolve. Even if the child isn't affirmatively saying, I prefer to live with one as opposed to the other, that might be how the parents would view it based upon the court's ruling. I suppose here's my question. Would you agree that it would be a bad thing to have the child put in a position of having to choose between parents? Your Honor, I think that's exactly why we have the in-camera, because the court can speak with the child. Counsel, you're not answering my question. I understand why people want to have an in-camera inspection opportunity, but my question was, would it be a bad thing to have a 10-year-old child put in a position of having to choose between which parent for custody? I don't believe so, Your Honor. I think that the 10-year-old can say, whether it be an open court or an in-camera, what he wants. I don't think he's choosing between a parent, but he or she should be permitted to say they desire X thing for Y reason. Now, certainly the court, whether it's an in-camera or an open court, can look at what the child is saying and why the child is saying that. For example, if you had a 15-year-old who wanted to live with dad because dad was going to buy him a Camaro, then that would be something that the court would say, well, that's not in the best interest as far as why the child wants to do or choose to live with that particular parent. In this case, the motion for in-camera was filed because one party was saying the little boy is saying this, the other party is saying the little boy is saying that. So- But counsel, wasn't that disagreement not so much about residential preference, but about these other collateral issues that might affect the residents? But it seems like they are not really about the child's preference. Judge, I believe if he would have spoken with the court, he would have been able to relay here's this issue as far as- Sure. While he's there, he could certainly express his preference. But that doesn't seem to be the reason that you're arguing that the in-camera interview was necessary. You seem to be suggesting the court should be investigating, are you really having these problems at some other school and so forth? Is that really the proper function of an in-camera interview? I agree, Judge. The interview would not have been what happened in regards to your brother prior, but it is what the child's preference is now and why they had that particular preference to some extent to figure out why they want to stay in Jacksonville or not go to Rushville to go to school in that particular schooling. Counsel, I want to read to you some excerpts that are relatively short that this court wrote many years ago and get your thoughts on what we said and how they might apply here. Twenty-eight years ago, this court in In Re Marriage of Heifer wrote the following about the business of having a in-camera discussion with the child to determine the child's best interests. The court wrote, such an approach places a tremendous amount of pressure on the child and then quoted this from the treatise. It is seldom in a child's interest to be asked to choose between his parents or to believe that his expression of preference will influence the judge's decision. Children often lack the maturity to make a wise choice and choosing tends to create feelings of disloyalty toward one parent, which can be quite devastating for the child, as well as the mother or father whom he rejects. Indeed, this is why the law requires that the custody decision at the end be made by adults. Why don't those concerns apply to the 10-year-old child in this case? I think those apply in every single case, and I think that would be a situation where the court can potentially determine the maturity of the child via the in-camera. To say that there is no bright line rule in terms of the child has to be X age. There is no bright line rule in terms of the child has to be an X grade. I believe it would be a situation where the court could address in meeting with the child, say it was a 7-year-old, to say, OK, this particular individual due to his or her age after talking with the child does not possess the adequate maturity to decide. And again, the child is not deciding. It's not a situation where the 10-year-old or the 7-year-old or the 14-year-old is telling the judge, this is how it's going to be. It's a factor that the judge can take into account if the judge decides to listen in this particular situation. Also, I think you're missing the entire point here. It's not that the child is in a position to do this. It's what is the effect of putting the child in that position to do this? No, the child may or may not know that their statements are going to decide the case or believe that their statements may decide the case. The whole point is you're putting the child in the position of having to express an opinion about basically which parent is better. But what's worse, in my opinion, in this case, you want the child not to talk about what your petition said. Your petition says that the court may interview the child in chambers to ascertain the allocation of parental responsibilities. That wasn't it. And in fact, in your own brief, you basically argued that there were two things you wanted covered. One, what's going on between him and his stepbrother and what's his situation at school? And the situation involving the stepbrother, the father himself testified. Some of the things that he told me, I'd rather not say them out here. Of course, my question is why? I'd rather him say it for himself. Because, I mean, it's for lack of better words, I guess some of the things scared me. This is an adult man saying he doesn't want to say these things because they scare him. But oh, no, take my 10-year-old son in here in a place he's never been, speaking to a person he's never met, who's the judge in this case, and make him do it instead. Where in the world do you see the logic in that? Judge, I guess in terms of the court would have been in charge of the questions that he would have asked, and I believe the court would have been able to ascertain whatever questions he wants as far as why does he want to live in what place? No, that's not what you wanted. That's not what you wanted. And it's clear from the record, that's not what you wanted. You wanted the kid to be the snitch, to be forced to be placed in a position of talking about his stepbrother, talking about the incident, talking about the relationship with the other kids, talking about situations that may have occurred at school, none of which are covered under 604.10a. And I can't figure out, as Justice Steigman began his questions, I still can't figure out why you didn't ask for a guardian ad litem to do that investigation for you so that the child's not in that position. Or secondly, why in the world would the father say, oh, no, I don't want to say these things because they scare me. But here, please take my son, make him tell you. Judge, as to the JL issue, one of the things that we had was this was occurring in August of 2023, with school being right around the corner. So part of what we had was we were trying to figure out, well, where is the child going to be going in the short term? Where is the child going to be going in the long term in terms of getting a JL on board? The concern was that it was going to create a much longer delay, rather getting a JL on, getting a JL's report and things like that. So there was a bit of a time constraint in terms of I think it was in mid late July or mid early August is when I'm filing my motions and things like that in a particular case with school starting in less than a month. OK, I got you. Expediency trumps the emotional stability of the child. I got you. OK, go ahead. Thank you, Your Honor. Initially, the appealee testified in the case and she testified in large part in regards to the problems that the other children, that is my my G.H.'s half older brother and his step siblings were having in their respective schools in the Jacksonville area. She also testified in terms of the children overall getting along together well, which in part does create the situation as far as she's in the home and is able to testify as far as that things are going well in the home between the children and that the child children like being in that particular residence. But there's my clients getting different information from G.H. himself as far as living with the people and being present with these other siblings. So why didn't you testify to that? Why didn't you testify to that? Judge, I think in this particular case, he believed that the best way to have that be handled would be in terms of the court being made aware of those issues. He was alluding to the problems that he was told, but he was alluding to problems that would have been in large part hearsay as far as him saying G.H. told me A, B and C happened in the home. He's got only G.H. to tell him that that happened. So he has this is the first post-divorce case where the parent doesn't testify about what the child's preferences are. Judge, I don't believe that the child's preferences are what he alluded to, but I don't think that he's really able to go into the nuts and the bolts without being objected to because that would be hearsay as far as the child saying, hey, I don't really like living at mom's because of this other sibling and this other issue. So you're left with the situation of how do we get this information before the court? We can not have G.A.L. That's how you get it before the court. I'm sorry, I shouldn't interrupt, but I think there were some objections. Mr. Hankins, you'll be given an opportunity to speak in a few moments. I want to be able to proceed without interruption. Go ahead, Mr. Benson. Thank you, Your Honor. It was on cross-examination of the appealee where it was made clear that the discipline slips and the issues at the local Jacksonville schools primarily involved G.H.'s half-brother and the half-brother, who I believe is autistic, having the issues and the problems at the school. I mean, he's the one who was getting the slips as opposed to third-party students and persons like that that were bullying. Aren't your comments right now demonstrating that we've gone a long way from the child's preference? Well, Judge, the overall child's preference can be based upon different factors. Well, I know, but we seem to be all about the factors and not so interested in the preference. It seems like this is a shortcut to getting at an investigation. Judge, I believe that's part of what the child would say as far as he was doing fine in school. He had no issues in Jacksonville. It's that when the appealee took the stand, she starts talking about the other children being bullied, the other children having problems, as opposed to my client and him being happy with school, happy with what was going on. And I think that is part of the preference as far as the child can like his school as opposed to a sibling who doesn't like his or her school. I get that the whole rest of the case might influence the child's preference, but the statute talks about an in-camera interview to simply find out what the child's preference is. And your argument goes so far beyond that, it's difficult to not see it as an attempt to do a shortcut investigation. Judge, I mean, both parties weighed them being present in the room, and so the court would have, of course, had the opportunity to ask what questions he wants to determine the preference of the child. I think the preference of the child, like you just said, is sort of the big picture, because if the child wants to live with a certain parent for the wrong reason, again, the parent's going to deny the person a Camaro, that's not a good situation as far as maybe in the best interest of the child. But it certainly was not a situation where I was submitting, here's the 32 questions you have to ask the child to the court. No, that was just in the motion. But you would agree that this is a discretionary determination by the judge if the judge thinks it would be valuable to the court, right? Judge, that's correct. It is. So is it unreasonable for a court to say, for many of the reasons that Justice Steigman mentioned, I will avoid the child interview until I hear the rest of the case and make a determination that I think it's necessary. Judge, that's how they often do that in terms of hearing the testimony, which is happening here, and the judge making that decision. And isn't the fact that the judge didn't order it essentially saying that he decided it wasn't necessary? I don't know, Judge. The judge made no order saying he's denying that motion. It just never shows up later on. If it would have been a situation where he would have denied that, then I would have had a situation where he's saying, I'm not going to hear from the child. We would have potentially had the ability to call the child to offer that that particular testimony. And it is a mess in terms of the time period and the lack of the G.A.L. But we were not able to really roll back the clock in terms of when Mr. Hankins and I got on board. It was in the late July, August time period. And the situation where they've already bought a house and are living in Rushville, in my opinion, if there's any doubt that that was the judge's ruling, do you have some responsibility to ask the court to ask to notice up your motion, to ask for reconsideration on that point? Well, I mean, Judge, the argument on August 25, it started out with me arguing that the motion should occur. And then it ended with me discussing with him the in-camera motion and him saying that he was going to hold it for now. And that's on August 25. And then so I'm waiting on the judge to rule on something when what he does is as far as the in-camera motion is when he puts out the parenting plan in the order. So I guess I could have noticed it up. But, you know, that that was her, the judge himself. He was holding it for now. Hey, Mr. Vincent, your time is up. You have an opportunity to address this again in rebuttal. Mr. Hankins, you may proceed, sir. Thank you. Your honors may please the court. Very briefly, when this case came to my attention and I was hired by Ms. Statz and I learned that she filed the pro se motion on school was upon us, I filed the motion for her to be able to relocate and all that. But with regard to the motion for appointment of guardian of item, I I can't agree with all the court's comments more based on my experience, based on handling of these matters for years. I inevitably and always ask the court to reserve ruling until the court hears all the evidence for the exact reasons the court just enumerated. There's nothing more I find more tense than a child waiting in the wings of the courthouse with, in this case, a step parent or a grandparent wondering if I'm going to have to talk to the judge or not or in the law library or what have you. At the very end of the evidence, the only witness that was called was Mr. Holtz. And when Mr. Vincent rested, the judge, Judge Tobin, said, could you please submit a brief and judgment or argument with a proposed parenting plan within X amount of days? I don't recall. And at that time, Mr. Vincent, while we were breaking, but still on the record, brought up the in camera. And at that point, Judge Tobin said that it's under advisement or reserving it or something along those lines. But we never heard back on it. So I put together my brief and argument. And when it came to that factor, when I was putting findings of fact for the court's it's not a factor to be considered since it was not there was no testimony hearsay wise, exception wise, or the child speak to the judge directly. I probably should have put in there that after having heard the testimony, the motion for in camera interview is denied and blah, blah, blah. But I didn't do that. So when the appeal came from Mr. Vincent or the that and the counsel, I think it's going to be up to the trial judge to make the ruling. Is it fair for counsel to expect that if he's made the motion, if he's reminded the judge about his request that the judge make a ruling, doesn't he owe him a ruling? Yeah, I would think so, Your Honor, but I guess when I was putting together my proposed judgment, which he wanted findings of facts. I, I don't think I don't think you I don't think it's my counsel, no one's suggesting you get out ahead of the judge's ruling and that you put a ruling in there that the judge hasn't made. I'm just saying. It's the judge's discretionary decision, but if the judge doesn't exercise that discretion one way or the other, isn't that a problem? Yes. It could, it can be, yes. Did the court simply adopt your proposed judgment? Yes, findings? Yes. But to put it bluntly, counsel, in accordance with Justice Daugherty's point, Mr. Havoc formally made a request, isn't he entitled to a response? Isn't that just a matter of good judicial housekeeping? Absolutely. Absolutely. Um, I, when, when Mr. Vincent rested, I simply thought there was just insufficient evidence to warrant the in-camera, but it maybe we should have made push that issue. So we had a good record on that issue. Judge, can we get a ruling or something? But was this readdressed at all in the motion for stay that came later? Yes, it was. Uh, there seems to be an inconsistency in the ruling. The court seems to be ruling twice on something and we don't know what it ruled on, Mr. Vincent filed. Uh, if, if I apologize, your honor. Okay. On October 27th, the 23 attorney, Vincent filed a motion to stay enforcement of the judgment because prior to that, when we initially got the case before the judge, um, the judge said on a temporary basis, that child's going to start school at Lincoln in Jacksonville, Illinois. And tell I hear the merits of the case. So my client commuted the child back and forth every day from Rushville to Lincoln. Um, then when we were successful and the, my client, Ms. The mother was able to enroll the child in the Rushville school district. Uh, Mr. Vincent, one of that stopped pending. Um, our appeal when we were in court that was denied. And the motion for in-camera interview was brought up and the judge said it's denied. Okay. So I'll ask Mr. Vincent when he comes back up, why he didn't include that transcript in the record. I don't think there was one. Sorry. Well, that's what they have bystanders reports for. But I'll let Mr. Vincent address that. He's, he's the one responsible for the record. Is Mr. Vincent to talk? Am I up? No, no, no. I'm just, I'll ask. Oh, I'm sorry. Okay. Um, everyone's complaining about the court, never ruling on the motion. Now you're telling me, yes, it did, but you just don't have a record. And that was the argument on appeal. That's the, that's the whole basis of his claim. The court never ruled on his motion. You're telling me as an officer of the court. Yeah, he did. And the motion for stay, the court indicated that the motion for in-camera was denied. Kind of blows a hole in the whole argument, doesn't it? But of course we wouldn't know that because we didn't get any record of it. Go ahead, Mr. Hankins. What am I to respond? Yes, just go right away. Well, no. Yeah. I mean, yeah, I agree with stranger and stranger. Right. I'm sorry. I agree with the court. Um, we were in court that day. The judge said, I'm not taking the kid back out of Rushfield to Jacksonville. And then it was brought up. What about this? And no, it's not. So none of that is in the record. We are limited to the record. I understand that. Did you suggest in your brief that this primary issue that Mr. Vincent is raising that the court never ruled was not correct because, you know, he really did rule. Uh, let me answer that for him. I don't recall. I may not have your honor. And okay, well, go ahead. Well, I mean, that's my comments on the, on the court and why we're here on the issue of the guardian of item. I agree. Or I mean the, uh, in camera, even though we were trying to move this on an expedited basis, I don't see why a GAL couldn't have gotten busy. Um, somebody who could say the judge say, Hey, I need you to move on this. Talk to all the clients, interview the children, talk to Mr. Uh, Vincent, or I mean, I'm sorry, Mr. Vincent's client, et cetera. And then submit a report. Um, if that was a failing Mr. Hankins, it's one that both parties would share. I, I didn't, I didn't want a GAL your honor. I didn't feel it necessary based on the way I presented my case. I mean, at that point, but again, I mean, you know, the motion, uh, is discretionary with the court after the evidence, but yeah, it should have been clearly, it should have been ruled on more clearly, I can't disagree with that. That, that I do agree with. I don't think it was necessary based on the evidence that, or the lack of evidence, because he wanted to modify custody. He wanted to take this child out of my client's care and into his care. And I know, um, to attend school in Jacksonville was his primary reason. Um, ironically it's not part of the record, but he doesn't even reside here now. So I don't know. I brought that up with Mr. Vincent, but be that as it may, that's not before the court, but. Well, how more clearly could a court rule then the motion is denied, but we don't know that because there isn't anything in the record telling us that. That is correct, your honor. That is correct. Anything else? Mr. Hankins? Not on, no, not on that issue, your honor, other than I, uh, with the remainder arguments, I found the evidence to be insufficient to modify custody. And there you have it. So, okay. Thank you, counsel. Mr. Vincent and Roboto, uh, you've heard the question come up. Uh, is it true that the trial court denying the motion for stay made reference to the fact that, uh, it had denied the request for a camera interview? Judge, we had the hearing on the motion to stay, which was denied. Uh, and at the end of that, I believe Mr. Hankins made a comment as far as, um, you know, I, I, something to the effect of it, and this is not on the record, something to the effect of, you know, I felt that he denied it in that he didn't, uh, you know, address it or want to have the hearing. And I think the court sort of looked at him and then it did not, again, not on the record, sort of nodded or something like that, that's as close as there would be any situation as far as the judge saying anything like that or implying anything like that. But that was obviously, um, after the petition or the appeal had been filed. That's, and that's not in the record. The only, the whole hearing in terms of the motion to stay was to try and say more or less that the child has been going to school in Jacksonville, that the last few weeks that the child, since the October 11 ruling, the next Monday the child started in Rushville was to say, well, wait a second during the pendency of the appeal to bring the child back to Jacksonville, where the school he had gone to the whole time. Mr. Vincent, the docket entry for November 21st, 23 reads case called for hearing on stay of judgment per in respondent and per in petitioner appears and by attorney Hankins respondent appears. And by attorney Vincent motion denied period motion for stay denied period. Of course, then the court's written order from that same November 23rd 23 hearing only references the motion to stay the judgment and indicates that it alone was denied. But there's a reference to another motion being denied. Gosh, what could that be? Could that be the motion for in camera? But judge, that wasn't before the court that particular day that wasn't argued. And like I said, it was sort of once the hearing was over with, there was some some comments that were made. But that there was no I did not set it for a rehearing on the motion or anything like that because that the appeal had been filed at that at that particular point. Well, did you make any comments to the court about the motion? No, there was no argument before the court on the lack of in camera other than it sort of being an after the hearing was done. You know, Mr. Hankins sort of not arguing, but kind of like saying, you know, I thought this happened because of this thing. And it wasn't problematic in that it wasn't it was more or less three people just talking at that point. There wasn't there wasn't a hearing. It wasn't an issue before the court at that particular time on that particular motion. Apparently the clerk was listening. What else could that other motion have been? I don't know. I mean, that's I guess if it's being implied that he's denying motions without having a hearing on them, but that did not come up. There was no argument. He had already heard you on the motion. He reserved ruling on it. He would have been well within his rights to have simply said to clarify. I've denied that motion. He did. He did not do that. He did not say, I'm denying your motion. I'm doing anything like that. He made it clear that he was denying the motion to stay. And then what was the other motion that was denied? There was no other motion before the court. So I don't know what motion he's referring to. Were there any reserved emotions that might have been denied? Not that I'm aware of your arm and the only the only motion that has never been dealt with, to my knowledge, is the motion for in camera, as far as there being any writing that it was denied. Anything else? Counsel, nothing further. I thank you. Okay. Thank you. Counsel. The court will take this man under advisement. Stand in recess.